UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SAMUEL R. TOLIVER,

          Petitioner,

    -vs-

DALE ARTUS, SUPERINTENDENT
WENDE CORRECTIONAL FACILITY


            Respondent.

_____

**DECISION AND ORDER**

**No. 11-CV-1051MAT**

## I. Introduction

*Pro se* Petitioner Samuel R. Toliver ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered June 25, 2009, in New York State, County Court, Erie County, convicting him, upon a plea of guilty, of Assault in the First Degree (N.Y. Penal Law ("Penal Law") § 120.10[4]).

## II. Factual Background and Procedural History

### A. Indictment, Plea, and Sentencing

Erie County Indictment No. 01196-2007 charged Petitioner with two counts of Attempted Robbery in the First Degree (Penal Law §§ 110.00, 160.15[1], [4]), two counts of Burglary in the Second Degree (Penal Law § 140.25[1][b], [d]), and two counts of Assault in the First Degree (Penal Law § 120.10[1], [4]). The charges

arose from an incident that occurred on June 13, 2003, wherein Petitioner, armed with a handgun, entered a Goodwill store in the Town of Cheektowaga, New York after it had closed and attempted to forcibly steal money from the assistant manager of the store, Teresa Harris ("Harris"), causing serious physical injury to her by striking her on the head with a handgun. See Erie County Ind. No. 01196-2007, dated 06/12/08 at Resp't Ex. A.

On April 27, 2009, Petitioner pleaded guilty in Erie County Court before the Hon. Shirley Troutman to Assault in the First Degree (Penal Law § 120.10[4]) in satisfaction of the indictment. See Plea Mins. [P.M.] of 04/27/2009.

Prior to sentencing, Petitioner, represented by new counsel, moved to withdraw his guilty plea on the basis that his plea was not entered knowingly and voluntarily. The county court denied Petitioner's motion. Sentencing Mins. [S.M.] 2-4. He was subsequently sentenced, as a second felony offender, to a determinate term of fifteen years imprisonment and five years post-release supervision. S.M. 9.

### B. Petitioner's Direct Appeal

Petitioner appealed his judgment of conviction in the Appellate Division, Fourth Department on the following grounds: (1) the trial court erred in denying his motion to withdraw his plea which was not knowingly, intelligently, and voluntarily entered; (2) his appeal waiver was ineffective to preclude his

challenge to the county court's harsh and excessive sentence; and (3) his sentence was unduly harsh and severe and should be modified in the interest of justice. See Pet'r Br. on Appeal, Points I-III at Resp't Ex. B. Petitioner also forwarded a *pro se* appellate brief to the Appellate Division, which was returned to Petitioner because he "failed to include 10 copies of the brief and proof of service of one copy of the brief on all parties." Letter of the Appellate Division, dated 09/16/2010 at Resp't Ex. B. The Appellate Division unanimously affirmed the judgment of conviction, and leave to appeal was denied. People v. Toliver, 82 A.D.3d 1581 (4th Dep't 2011); lv. denied, 17 N.Y.3d 862 (2011). Petitioner filed a motion for reconsideration in the New York Court of Appeals, which was denied on September 14, 2011. Id.

**C. Petitioner's Motion to Vacate the Judgment of Conviction**

On or about November 14, 2011, Petitioner filed a motion, pursuant to N.Y. Crim. Proc. Law ("CPL") § 440.10, to vacate his judgment of conviction on the following grounds: (1) that he was denied effective assistance of counsel because his attorney consented to a confirmatory DNA test without having fully investigated his case; (2) prosecutorial misconduct; (3) the trial court lacked jurisdiction to try him on the indictment because the Cheektowaga officers were without authority to enter the City of

Buffalo to make the arrest; and (4) a <u>Miranda</u> violation.  <u>See</u> Pet'r
Motion to Vacate at Resp't Ex. E.  In a Memorandum and Order dated
March 1, 2012, the Erie County Court (Hon. Kenneth F. Case) denied
Petitioner's motion.  <u>See</u> Mem. and Order of the Erie County Court,
dated 05/01/2012 at Resp't Ex. E.  The Appellate Division denied
leave to appeal on May 22, 2012. <u>See</u> Appellate Division decision,
dated 05/22/2012 at Resp't Ex. F.

### D.   The Federal Habeas Corpus Petition

This habeas corpus petition followed, wherein Petitioner seeks
relief on the following grounds: (1) that the trial court erred in
denying his motion to withdraw his plea because his plea was
unlawfully induced or not made voluntarily; (2) he was denied
effective assistance of counsel; and (3) his "[c]onviction [was]
obtained by the use of evidence gained pursuant to an unlawful
arrest/unconstitutional    search    and    seizure;    and    (4)    his
"[c]onviction [was] obtained by a violation of the privilege of
self-incrimination."   <u>See</u> Pet. ¶ 12A-D and Supp. Aff. at p 10-43
(Dkt. No. 1).  Respondent filed an answer and supporting memorandum
in opposition to the petition (Dkt. Nos. 12-14), and Petitioner
filed a reply (Dkt. No. 15) and memorandum[1] (Dkt. No. 16).

_____

[1]In his Memorandum, Petitioner raises, improperly, a new, stand-alone
ineffective assistance of appellate counsel claim.  <u>See</u> Rule 2(c) of the Rules
Governing Section 2254, Cases in the United States District Courts ("The

For the reasons that follow, Petitioner's request for habeas relief is denied and the petition is dismissed.

## III. The Exhaustion Requirement

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ."  28 U.S.C. § 2254(b)(1)(A);  see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994), cert. denied, 514 U.S. 1054 (1995).  "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (en banc), cert. denied, 464 U.S. 1048 (1984).

## IV.  The AEDPA Standard of Review

For federal constitutional claims adjudicated on the merits by a state court, the deferential standard of review codified in the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") applies.

---

petition must . . . specify all the grounds for relief available to the petitioner. . . ."); see also Knipe v. Skinner, 999 F.2d 708, 711 (2d Cir. 1993 ("[a]rguments may not be made for the first time in a reply brief.").  To the extent that Petitioner responds, in his reply memorandum, to Respondent's contentions in opposition to his petition, those responses have been considered by the Court.  His new, stand-alone ineffective assistance of appellate counsel claim, on other hand, is not considered by this Court.

A habeas petitioner can only obtain habeas corpus relief by showing that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

## V.  Analysis of the Petition

### 1.  Trial Court Erred in Denying Motion to Withdraw Guilty Plea (Ground One)

At ground one of the petition, Petitioner argues, as he did on direct appeal, that the trial court erred in denying his motion to withdraw his guilty plea because his plea was unlawfully induced or not made voluntarily. <u>See</u> Pet. ¶ 12A, Supp. Aff. at p 10-18. According to Petitioner, he should have been permitted to withdraw his guilty plea because "he was not advised of the consequences of his plea, the range of sentence he could receive, the rights he was giving up nor the effect of a previous conviction on that plea." Pet. ¶ 12A; <u>see</u> <u>also</u> Supp. Aff. at 11-12.  In his supporting affidavit, he also claims that the plea was involuntary because the county court "never clarified nor made inquiry into whether [his] answers to the court['][s] . . . questions were read from a paper

and did not request to examine the paper from which . . . Petitioner was reading." Supp. Aff. at 13. The Appellate Division adjudicated this claim on the merits. Toliver, 82 A.D.3d at 1581-82. Therefore, the AEDPA standard of review applies, and, under that standard, Petitioner's claim is meritless.

Due process requires that a guilty plea be voluntary, as well as knowing and intelligent. See, e.g., Bousley v. United States, 523 U.S. 614, 618 (1998); Brady v. United States, 397 U.S. 742, 748 (1970). In this case, Petitioner's plea transcript demonstrates that he knowingly, voluntarily and intelligently pleaded guilty to the charge of first-degree assault. Petitioner acknowledged that he understood that "by pleading guilty to [the] charge [he] could be sentenced up to a maximum sentence of up to 25 years followed by five years of postrelease supervision." P.M. 7. He also stated that he understood that if it turned out he had a prior felony conviction, "the law would require that [the sentencing judge] sentence [him] in a specific way." P.M. 11. The sentencing judge clarified that this meant "there would be a mandatory minimum sentence that the [c]ourt would have to consider," and Petitioner responded that he understood. P.M. 11. Petitioner also stated that he understood the rights he would be giving up by pleading guilty, including his rights to a jury trial,

to require the People to call witnesses and testify against him and have his attorney question those witnesses, to testify in his own defense, to require the People to prove his guilt beyond a reasonable doubt, and to challenge the legality of any statements he made to the police, and evidence received, and the manner in which the police investigated the case. P.M. 8-10. Further, Petitioner agreed to waive his right to appeal his conviction. P.M. 13. In response to the trial court's inquiry, Petitioner acknowledged that he had discussed the plea with his attorney and wished "to resolve all of the counts in the indictment by pleading guilty under the fifth count to assault in the first degree in violation of Penal Law section 120.10 subdivision four which is a Class B violent felony." P.M. 6. He acknowledged that he understood he was confessing his guilt by pleading guilty, and that he was entering the guilty plea because he believed he was, in fact, guilty. P.M. 7, 18. The record also reflects that Petitioner made out a sufficient factual basis to the crime. P.M. 14-16.

Moreover, once a guilty plea is accepted by the court, there is "no absolute right" to withdraw it. <u>Murray v. McGinnis</u>, No. 00 Civ. 3510(RWS), 2001 U.S. Dist. LEXIS 108, 2001 WL 26213, at *4 (S.D.N.Y. Jan. 10, 2001) (citing <u>U.S. ex rel. Scott v. Mancusi</u>, 429

F.2d 104, 109 (2d Cir. 1970)); see also Thomas v. Senkowski, 968 F.Supp. 953, 956 (S.D.N.Y. 1997) ("With respect to a motion to withdraw a guilty plea, the nature and extent of the fact-finding procedures requisite to the disposition of such motions rest largely in the discretion of the Judge to whom the motion is made.") (internal quotation marks and citations omitted). All that is required is that the court provide the defendant with a "reasonable opportunity to present his contentions." Id. Here, Petitioner was provided with such an opportunity prior to sentencing. The record reflects that Petitioner presented his contentions to the county court by way of a filed motion to withdraw the guilty plea and oral argument. S.M. 2-4. During oral argument, Petitioner's attorney explained to the court that the motion included his client's affidavit, which set forth the reasons for withdrawing the guilty plea. S.M. at 2-3. Petitioner's attorney stated that "it appears that my client's application is grounded upon non-record occurrences which affected his ability to knowingly and voluntarily enter a guilty plea, and we would rest on the substance of my client's affidavit without repeating it at this point." S.M. 3. After reviewing the papers filed and considering the arguments presented by both parties, the county court denied Petitioner's motion, stating as follows:

> [t]he defendant claims that he did not
> knowingly and intelligently enter into
> the plea that this Court previously
> accepted; and states that there were
> things said by his attorney that should
> cause the Court to allow him to withdraw
> the plea. He claims misrepresentation by
> prior counsel.
>
> Notably, the Court asked if anyone
> promised the defendant anything else. I
> took the time throughout the plea,
> interrupted it to allow the defendant to
> repeatedly speak to counsel about any
> concerns. This Court stated to Mr.
> Toliver that the Court was prepared to
> and the People were ready to give him the
> original jury trial he demanded.
>
> Mr. Toliver, it is this Court's belief
> that you knowingly and intelligently
> entered into the plea and, therefore,
> your request to withdraw your plea is
> denied.

S.M. 4. After ruling on Petitioner's motion, the sentencing judge permitted Petitioner to address the court, at which time he explained that, at the time of the plea, he had been "distressed" and "upset" and "didn't know what [he] was saying." S.M. 6. He went on to state that "[j]ust because I recited something on papers, that don't necessarily mean that I admit I knew what I was reading." S.M. 6. The sentencing judge then asked Petitioner, "[w]hat are you referring to as having read?" S.M. 6. In response, Petitioner stated:

> Mr. Johnson (Petitioner's attorney at the
> plea) told me to recite what was on the paper,
> all he said was, read this, and I read it. He
> didn't tell me, if you read this, this is
> what's going to happen, this is what this
> means or anything like that. He said read
> this, and that's that, and that's what I did.
> I made a statement. I never said I was guilty
> or anything.

S.M. 6-7. In response to Petitioner's statement, the sentencing judge read back to Petitioner the relevant portions of his plea transcript, highlighting that "[Petitioner] did everything that was alleged and [Petitioner] knowingly pled guilty to it." S.M. 9. The trial court then sentenced Petitioner, in accordance with the plea agreement, to a determinate term of imprisonment of fifteen years with five years of post-release supervision. S.M. 9.

Petitioner's after-the-fact contentions that "he was not advised of the consequences of his plea, the range of sentence he could receive, the rights he was giving up[,] nor the effect of a previous conviction on that plea" (Pet. ¶ 12A) is clearly belied by the record, as set forth above. There is no evidence in the record -- nor has Petitioner pointed to any other evidence -- that suggests Petitioner's guilty plea was anything other than voluntary, knowing, and intelligent. Notably, at no point during the plea proceedings did Petitioner express hesitation at entering his guilty plea or indicate that he did not understand was what was

occurring.  In fact, Petitioner explicitly stated that "[he] underst[ood] everything" when the trial court asked him at the plea proceeding, "[o]ther than your perhaps being a little nervous, is there any reason why you wouldn't understand what's going on at this time?"  P.M. 7.

Indeed, self-inculpatory statements made by a defendant under oath at a plea hearing "carry a strong presumption of verity," and a court, in reviewing belated claims of innocence, must draw all permissible inferences in favor of the government and against the defendant.  United States v. Maher, 108 F.3d 1513, 1530 (2d Cir. 1997) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)).  Moreover, a trial judge who addressed a defendant individually in taking a defendant's guilty plea, and had the opportunity to observe the defendant's demeanor and observe his or her credibility, is entitled to reject belated claims of innocence that contradict credible pleas of guilty.  Maher, 108 F.3d at 1531; see also United States v. Lasky, 23 F. Supp. 2d 236, 243 (E.D.N.Y. 1998).  Petitioner's post-plea claims directly contradict the statements that he made under oath at the plea hearing in which he admitted to the crime of first-degree assault.  It was therefore not unreasonable for the county court -- which had addressed Petitioner individually in taking his guilty plea, and had the

opportunity to observe his demeanor and observe his credibility --
to deny his motion to withdraw his guilty plea.

Accordingly, this Court cannot find that the county court's
denial of Petitioner's motion to withdraw his guilty plea, as
affirmed by the Appellate Division, was contrary to or an
unreasonable application of clearly established federal law. Nor
can it be said that the state court determination was based on an
unreasonable determination of the facts in light of the evidence
presented in the state court proceeding. 28 U.S.C.
§ 2254(d)(1)(2). This claim is therefore denied in its entirety.

## 2. Ineffective Assistance of Counsel (Ground Two)

At ground two of the petition, Petitioner argues that he was
denied the effective assistance of counsel. Specifically, he
claims that "counsel failed to protect the most basic rights of his
client, failed to inform [Petitioner] of the consequences of [the]
plea, [and] threatened [Petitioner] [with] an extreme sentence if
[Petitioner] did not plead guilty." Pet. ¶ 12B, Supp. Aff. at p
19-31. Petitioner also claims that counsel "failed to protect
[Petitioner's] rights . . . by allowing the government to illegally
obtain [a DNA sample] that was used against [Petitioner] to coerce

the plea." Pet. ¶ 12B. For the reasons discussed below, this claim does not warrant habeas relief.

**(A) Exhaustion**

Initially, Petitioner's claims that "counsel failed to protect the most basic rights of his client, failed to inform [Petitioner] of the consequences of [the] plea, [and] threatened [Petitioner] [with] an extreme sentence if [Petitioner] did not plead guilty" are unexhausted because they were not properly raised in the state courts. To the extent the claims are record-based, Petitioner failed to raise them on direct appeal.[2] To the extent the claims involve matters *dehors* the record, Petitioner did not raise them in a motion to vacate, although he still could. Petitioner's failure to exhaust the claims, however, is not fatal to the Court's disposition of them on the merits. Because the Court finds the claims to be wholly meritless,[3] it has the discretion to dismiss

---

[2]

As Petitioner points out in his reply, he did raise a stand-alone ineffective assistance of counsel claim on what appears to be the same basis in his *pro se* leave application to the New York Court of Appeals. However, a claim raised for the first time in an application for discretionary review has not been properly exhausted. See St. Helen v. Senkowski, 374 F.3d 181, 183 (2d Cir. 2004) (citing Castille v. Peoples, 489 U.S. 346, 351 (1989).

[3]

The habeas statute does not articulate a standard for denying a petition containing unexhausted claims on the merits, and neither the Supreme Court nor the Second Circuit has established one. The various formulations suggested by district courts in the Second Circuit share "the common thread of disposing of unexhausted claims that are unquestionably meritless." Keating v. New York, 708 F. Supp. 2d 292, 299 n.11 (E.D.N.Y. 2010) (citing Williams v. Artus, 691 F.

the petition notwithstanding Petitioner's failure to exhaust.  See 28 U.S.C. § 2254(b)(2);  <u>Pratt v. Greiner</u>, 306 F.3d 1190, 1197 (2d Cir. 2002).

Petitioner's remaining ineffective assistance claim -- i.e., that counsel "failed to protect [Petitioner's] rights . . . by allowing the government to illegally obtain [a DNA sample] that was used against [Petitioner] to coerce the plea" -- is exhausted, as it was properly raised in the state court as a stand-alone claim in Petitioner's motion to vacate.  See Pet'r Motion to Vacate at Resp't Ex. E.  In reviewing this claim, the Erie County Court determined that it lacked merit.  See Mem. and Order of the Erie County Court, dated 03/01/2012 at 3-4 at Resp't Ex. E.  Because the state court adjudicated this particular claim on the merits, the AEDPA standard of review applies to it.

### (B)  Petitioner's Ineffective Assistance of Counsel Claims are Meritless under <u>Strickland v. Washington</u>

Under the standard promulgated by the Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), a petitioner is required to demonstrate both deficient performance and prejudice as

---

Supp.2d 515, 526-27 (S.D.N.Y. 2010) (relying upon 28 U.S.C. § 2254(b)(2) where unexhausted claims were "plainly meritless"); <u>Robinson v. Phillips</u>, No. 04-CV-3446 (FB), 2009 U.S. Dist. LEXIS 99417, 2009 WL 3459479, at *1 (E.D.N.Y. Oct. 23, 2009) (relying upon 28 U.S.C. § 2254(b)(2) where unexhausted claims were "patently frivolous")).

a result of that performance in order to state a successful claim for ineffective assistance of counsel. Id. at 688, 694. "During plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'" Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). The Supreme Court has held that "the two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel." Hill v. Lockhart, 474 U.S. 52, 58 (1985).

The performance prong of Strickland requires a defendant to show "'that counsel's representation fell below an objective standard of reasonableness[,]'" Hill, 474 U.S. at 57 (quoting Strickland, 466 U.S. at 688), "keep[ing] in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case." Strickland, 466 U.S. at 690. Counsel is "strongly presumed" to have provided effective assistance and to have and made all significant decisions in the exercise of reasonable professional judgment." Id.

With regard to prejudice, "[i]n the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." Lafler, 132 S. Ct. at 1384

(citing <u>Missouri v. Frye</u>, 132 S.Ct. 1399, 1409 (2012); <u>Hill</u>, 474 U.S. at 59 ("The . . . 'prejudice,' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process")). Thus, a petitioner who pleads guilty and who seeks to establish counsel's ineffectiveness under <u>Strickland</u> "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill</u>, 474 U.S. at 59.

In the context of federal habeas corpus review of a <u>Strickland</u> claim under § 2254(d)(1) of AEDPA, "[t]he question 'is not whether a federal court believes the state court's determination' under the <u>Strickland</u> standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quoting <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473 (2007)). "[B]ecause the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a petitioner has not satisfied that standard." <u>Knowles</u>, 556 U.S. at 123 (citing <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004)). In applying these principles to Petitioner's ineffective assistance of counsel claims, the Court finds them meritless.

With respect to Petitioner's claims that counsel did not to protect Petitioner's rights, that he failed to inform Petitioner of the consequences of the plea, and that he threatened Petitioner to

plead guilty, Petitioner has offered nothing more than bald assertions to buttress his claim. Further, his self-serving statements are unsupported and unsubstantiated by anything in the record. And, Petitioner's contentions are contradicted by his own sworn statements at the plea proceeding (see discussion *supra* at section V, 1).

Specifically, the record reflects that: Petitioner had discussed with his attorney resolving his case with a plea and that it was Petitioner's decision to do so; that Petitioner was pleading guilty because he was in fact guilty of assault in the first degree; that he could be sentenced up to a maximum of 25 years imprisonment followed by five years of post-release supervision by pleading guilty, and that the court would have to consider a mandatory minimum sentence if it turned out Petitioner had a prior felony conviction; that Petitioner understood he was giving up certain rights by pleading guilty; that Petitioner, nor any member of his family, had been threatened or abused in any way in order to get him to plead guilty; and, that he was entering the guilty plea on account of his own free will. P.M. 18. Additionally, the Court notes that immediately prior to entry of the guilty plea, Petitioner was specifically asked by the county court if he needed a further opportunity to speak to his attorney. Without hesitation, Petitioner replied in the negative. P.M. 18.

As discussed *supra*, the Supreme Court has stated that solemn declarations in open court carry a strong presumption of verity. Blackledge, 431 U.S. at 74 (1977). As a result, a habeas petitioner faces the weighty burden of proving that he is entitled to relief. See id. Petitioner has failed to do so, and his claims are therefore meritless.

Similarly, Petitioner's contention that counsel "failed to protect [his] rights by allowing the government to illegally obtain [a DNA sample] that was used against him to coerce the plea," (Pet. ¶ 12B) is also meritless. The record reflects that Petitioner, apparently assuring defense counsel that he was innocent and that the DNA sample would lead to his exoneration, allowed his attorney to consent to the taking of the DNA sample without challenge. On July 23, 2008, the parties appeared in court for arguments on the People's motion to obtain a buccal swab from Petitioner. In support of the motion, the prosecutor argued that the People were seeking the DNA sample "for comparison purposes." Mins. of 07/23/2008 2. Initially, Petitioner's attorney opposed the application, stating that "[the People] already have a DNA sample from my client and I believe that that would be sufficient at this point. One second, your Honor, if I just may talk to [Petitioner]." Mins. of 07/23/2008 2. A discussion was held off the record, and, after conferring with Petitioner, defense counsel stated, "Your Honor, it's my client's standpoint that they have the

wrong guy. This would be in furtherance of his exoneration and we'll consent to it." Mins. of 07/23/2008 3. At no point after counsel made this statement did Petitioner object or otherwise indicate to the court he did not wish to consent or that counsel had misrepresented his position. Insofar as defense counsel appears to have consented to the taking of the DNA comparison sample (via buccal swabbinh) based on Petitioner's assurances that he was innocent and said sample would exonerate him, the Court cannot find that counsel acted in an objectively unreasonable manner.

In any event, even assuming error, Petitioner has not demonstrated that "there is a reasonable probability that, but for counsel's error, [he] would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. Petitioner asserts that the prejudice resulting from counsel's error is "obvious." Supp. Aff. at p 23. It is not, however, obvious to this Court. Petitioner maintains that "by allowing Petitioner to submit to a DNA sample, counsel . . . supplied proof positive evidence that the people did not previously have, evidence that linked . . . Petitioner directly to the crime . . . ." Id. The Court finds Petitioner's argument unavailing. The record reflects that the People requested the buccal swab at issue only for "comparison" and "probability" purposes because a sample of Petitioner's DNA was already in the state databank as the result of

a prior felony conviction, and had ben used to "link" Petitioner to the instant crime. Mins. of 07/23/08 at 3. Moreover, Petitioner, faced with mounting evidence against him, availed himself of an advantageous plea that allowed him to plead guilty to one count of a six count indictment. Certainly, Petitioner's dissatisfaction with the outcome of the proceeding is not a valid basis on which to find that defense counsel provided ineffective assistance of counsel. See United States v. Garguilo, 324 F.2d 795, 797 (2d Cir. 1963) ("A convicted defendant is a dissatisfied client, and the very fact of his conviction will seem to him proof positive of his counsel's incompetence."). Accordingly, the state court's adjudication of this claim was neither contrary to nor an unreasonable application of clearly established Supreme Court law.

In sum, Petitioner's ineffective assistance of counsel is meritless and provides no basis for habeas relief. The claim is therefore denied in its entirety.

**3.  Fourth Amendment Claim (Ground Three)**

At ground three of the petition, Petitioner appears to be challenging the lawfullness of his arrest on Fourth Amendment

grounds.[4]  See Pet. ¶ 12C, Supp. Aff. at p 32-39.  For the reasons stated below, this claim provides no basis for habeas relief.

As an initial matter, this claim is unexhausted because it is raised for the first time in the habeas petition.  See 28 U.S.C. § 2254(b)(1)(A).  Nonetheless, the Court finds the claim meritless and denies it pursuant to 28 U.S.C. § 2254(b)(2).

In Tollett v. Henderson, 411 U.S. 258, 267 (1973), the Supreme Court explained that "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to deprivation of constitutional rights that occurred prior to the entry of a guilty plea."  Accordingly, Petitioner's Fourth Amendment claim is barred from habeas review by virtue of his voluntary, knowing, and intelligent guilty plea (see sections V, 1-2, *supra*).

Moreover, even if this claim was not barred by Petitioner's valid guilty plea, it would still be barred from habeas review by the doctrine set forth in Stone v. Powell, 428 U.S. 465, 494 (1976).  In that case, the Supreme Court found that "where the

---

[4] At ground three of the petition, Petitioner states, in a rather confusing manner, that, "[t]he police, outside of their territorial jurisdiction, stopped and arrested the [P]etitioner without a warrant and without authority to do so. Probable cause to arrest had not been clearly established owing to the absence of a valid arrest warrant.  Secondly, the government used this unlawful arrest to obtain evidence from [P]etition[er] to indict."  Pet. ¶ 12C.  The Court, liberally construing Petitioner's *pro se* pleadings, reads ground three of the petition as an alleged violation of Petitioner's Fourth Amendment right to be free from unlawful searches and seizures.

State has provided an opportunity for full and fair litigation of a Fourth Amendment claim a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Id. at 494 (internal citation omitted).

Accordingly, Petitioner's Fourth Amendment claim provides no basis for habeas relief and is denied in its entirety.

**4.   Fifth Amendment Claim (Ground Four)**

At ground four of the petition, Petitioner claims that his conviction was obtained in violation of his Fifth Amendment right against self-incrimination. See Pet. ¶ 12D, Supp. Aff. at p 39-43. Specifically, he claims that "[he] has a right to be free from bodily intrusion and to deny aiding the government in obtaining evidence that can be used to convict. As a result of [an] unlawful arrest and subsequent seizure[,] the government obtained a DNA sample from [him] and used this sample as evidence he committed a crime and secured an indictment as a result." Pet. ¶ 12D. For the reasons stated below, this claim does not warrant habeas relief.

Initially, this claim, like the previous claim, is also unexhausted because it is raised for the first time in the habeas petition. See 28 U.S.C. § 2254(b)(1)(A). Nonetheless, the Court finds this claim meritless as well and denies it pursuant to 28 U.S.C. § 2254(b)(2).

The Fifth Amendment provides that "no person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V.  The Fifth Amendment privilege does not protect a person from being compelled to produce "real or physical evidence," but rather protects against the compulsion of evidence that is "testimonial or communicative in nature."  Schmerber v. California, 384 U.S. 757, 764, 761 (1966).  Because the DNA sample taken from Petitioner (via buccal swabbing) is not testimonial or communicative in nature, his Fifth Amendment rights were not violated.  See id., 384 U.S. at 765 (blood sample admissible because it "was neither petitioner's testimony nor evidence relating to some communicative act or writing" by defendant).

Moreover, the Court notes that, although Petitioner has framed this claim as a Fifth Amendment violation, his supporting factual allegations call to mind Petitioner's Fourth Amendment right to be free from unlawful seizures.  Thus, to the extent this claim can be construed as such, it too fails on the merits because it is waived by Petitioner's voluntary, knowing, and intelligent guilty plea and because of the doctrine set forth in Stone v. Powell.

Thus, Petitioner's claim is meritless and provides no basis for habeas relief.  It is therefore denied.

**V.   Conclusion**

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. No. 1) is denied,

and the petition is dismissed.  Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability.  See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000).  The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person.  Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     January 3, 2013
           Rochester, New York